**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                   *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BUSHRA,** | : | **Civil Action No.** |
| 1719 Powder Mill Lane | : | |
| Wynnewood, PA 19096 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **MAIN LINE HEALTH, INC.,** | : | |
| 130 S Bryn Mawr Avenue | : | |
| Bryn Mawr, PA 19010 | : | |
| | : | |
| 240 N Radnor Chester Road | : | |
| Radnor, PA 19087 | : | |
| Defendant. | : | |

### CIVIL ACTION

Plaintiff, Joseph Bushra (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Main Line Health, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act ("Title VII"), as amended, and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Main Line Health, Inc. is a hospital system with a location at

130 S Bryn Mawr Avenue, Bryn Mawr, PA 19010 and a corporate headquarters 240 N Radnor Chester Road, Radnor, PA 19087.

4. At all times relevant hereto, Defendant was an employer as defined by Title VII and the PHRA, employing the requisite number of employees as required by statute.

5. At all times relevant hereto, Plaintiff was an employee as defined by Title VII and the PHRA.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under Title VII and PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 18, 2022, alleging religious discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2022-03842 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated December 19, 2022. Plaintiff received the notice by electronic mail.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. In 2003, Plaintiff began working for Defendant through Main Line Emergency Medical Associates, LLC ("MLEMA") in the position of physician. Plaintiff was contracted to provide Emergency Medicine Services in the Emergency Room.

23. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF REQUESTED A RELIGIOUS ACCOMMODATION TO BE EXEMPT FROM THE COVID-19 VACCINE

24. Plaintiff is a Christian, and specifically a member of the Tenth Presbyterian Church.

25. On September 15, 2021, Plaintiff requested the reasonable religious accommodation in the form of an exemption from Defendant's COVID-19 Vaccination Policy, which required vaccination for COVID-19.

26. Plaintiff's accommodation request was based upon his sincerely held religious beliefs.

27. Due to all of the available COVID-19 vaccines being tested or developed through the use of fetal cells obtained from aborted fetuses, Plaintiff was unable to receive the COVID-19 vaccine due to his religious beliefs.

28. Plaintiff follows a Christian worldview that teaches that humans are made in God's image, conferring the highest value on human life from the moment of conception.

29. This worldview and sincerely held religious belief prohibits him from actions that put himself or others at unnecessary risk of harm.

30. Plaintiff's sincerely held religious beliefs required him to act in accordance with his conscience and instructed him that to violate his conscience is sin.

31. The vaccines available at the time of Plaintiff's accommodation request were developed through medical research utilizing cells obtained from aborted fetuses.

32. It is Plaintiff's sincerely held religious belief that his receiving a vaccine developed using these fetal cells would signify his approval of the unethical means used to develop it, which he cannot do while remaining true to his faith.

33. Plaintiff's sincerely held religious beliefs also prohibit Plaintiff from taking action that puts him at unnecessary risk of harm.

34. Plaintiff had already recovered from COVID-19 at the time he requested an accommodation and, as a result, was statistically at extremely low risk of reinfection or death from COVID-19.

35. The risks of COVID-19 vaccination are known, however the clinical benefit of receiving vaccination after infection is not known to outweigh the risks.

36. Therefore, receiving the COVID-19 vaccine would violate Plaintiff's sincerely held religious beliefs of taking action which would put him at unnecessary risk.

37. Plaintiff also stated in his request that the COVID-19 vaccines were in short supply worldwide and that there were those around me at greater risk of harm with the greater potential benefit from the vaccine.

38. These individuals would be deprived of said benefit if Plaintiff receive the scarce resource instead of them.

39. To receive the COVID-19 vaccine at this point in lieu of another in greater need would violate his sincerely held religious beliefs as a Christian.

40. With Plaintiff's original exemption request, he submitted a letter from the senior minister of his church which reiterated the violations of his conscience which would occur if he received the COVID-19 vaccine and how that would violate his sincerely held religious beliefs.

41. Plaintiff's senior minister stated, "Dr. Bushra would be sinning by violating his conscience before the Lord," or words to that effect.

42. It is Plaintiff's sincerely held religious belief that he is required to act in accordance with his conscience and that to violate his conscience is a sin.

**PLAINTIFF INFORMED THE PRESIDENT OF LANKENAU MEDICAL CENTER OF HIS REQUESTED RELIGIOUS ACCOMMODATION AND WAS IMMEDIATELY QUESTIONED ABOUT IT**

43. On or around September 21, 2021, Plaintiff met with Phillip Robinson, President of Lankenau Medical Center ("LMC"), and informed him that he had requested a religious accommodation in the form of exemption from the COVID-19 vaccine requirement and was awaiting the decision of the committee.

44. In response, Mr. Robinson immediately questioned Plaintiff's religious denomination with a demeanor which indicated he did not give any weight to the position that Plaintiff held sincerely-held religious beliefs which entitled Plaintiff to an accommodation.

**DEFENDANT PROCEEDED TO NAME PLAINTIFF'S REPLACEMENT AS CHIEF OF EMERGENCY MEDICINE BEFORE A DECISION WAS MADE ON HIS RELIGIOUS ACCOMMODATION**

45. Immediately after this meeting, Mr. Robinson conferred with Dr. Jonathan Stallkamp, Chief Medical Officer, regarding Plaintiff's accommodation request.

46. The following day, Mr. Robinson and Dr. Stallkamp requested that Dr. Steven Gamburg, President of MLEMA, name Plaintiff's replacement as Chief of Emergency Medicine.

47. Mr. Robinson and Dr. Stallkamp requested this of Dr. Gamburg prior to any action on Plaintiff's religious accommodation request.

### DEFENDANT DENIED PLAINTIFF'S RELIGIOUS ACCOMMODATION

48. On or around September 24, 2021, Defendant's Religious Exemption Committee denied Plaintiff's religious accommodation request.

### PLAINTIFF APPEALED DEFENDANT'S DENIAL OF HIS RELIGIOUS ACCOMMODATION

49. Plaintiff proceeded to appeal Defendant's denial of his religious accommodation request in accordance with Defendant's policy.

50. Plaintiff submitted additional supporting information and offered to personally appear before the appeals committee to Dr. Emma Simpson, President of Main Line Health Medical Staff.

51. However, Ms. Simpson denied Plaintiff's offer to personally appear before the appeals committee.

### DEFENDANT DENIED PLAINTIFF'S APPEAL OF HIS RELIGIOUS ACCOMMODATION AND GAVE HIM TWO (2) WEEKS TO BECOME VACCINATED OR BE PLACED ON ADMINISTRATIVE SUSPENSION

52. On or around October 19, 2021, Defendant's appeals committee denied Plaintiff's reasonable religious accommodation request.

53. The denial, signed by Dr. Stallkamp and Dr. Simpson, stated that Plaintiff "did not articulate a sincerely held religious belief that is contrary to receiving the COVID-19 vaccination" or words to that effect.

54. Defendant informed Plaintiff that he had two (2) weeks to become vaccinated or face administrative suspension.

55. Administrative Suspension with Defendant does not allow any due process or recourse.

56. Plaintiff believed this action was both discriminatory based upon his religion and in retaliation for having exercised protected activity in the form of requesting a religious accommodation.

## PLAINTIFF WROTE A LETTER TO DEFENDANT'S BOARD OF DIRECTORS TO GRANT HIM HIS RELIGIOUS ACCOMMODATION, BUT WAS DENIED

57. On or around October 22, 2021, Plaintiff wrote a letter to Defendant's Board of Governors, asking them to intervene on his behalf and to grant him his religious accommodation in order to prevent an act of religious discrimination.

58. On or around October 28, 2021, Elizabeth Balderston, Chair of the Board of Governors, signed a letter declining Plaintiff's request to intervene and instead told Plaintiff to receive the vaccination in violation of his sincerely held religious beliefs.

## PLAINTIFF WAS REQUIRED TO ATTEND A COMMITTEE MEETING REMOTELY, AND THEN HAD HIS PRIVILEGES ADMINISTRATIVELY SUSPENDED FOR ATTENDING THE MEETING

59. On or around November 9, 2021, Plaintiff attended the LMC Medical Operations Committee meeting remotely, as was one of his duties as Chief of the Emergency Department at LMC.

60. Plaintiff was not only required to attend this meeting, but was invited to attend this meeting.

61. Plaintiff was also called upon by name to present a report.

62. However, before the meeting was over, Thomas Mendicino, Senior Counsel, informed Plaintiff that, due to his attendance at the meeting, he was to have his privileges administratively suspended the following day.

63. This was done in retaliation for his religious accommodation request because had he not attended the meeting, he would have been derelict of his duties as Chief of the Emergency Department.

### DEFENDANT PLACED PLAINTIFF ON ADMINISTRATIVE SUSPENSION AS IT REFUSED TO ACCOMMODATE PLAINTIFF'S REASONABLE RELIGIOUS ACCOMMODATION REQUEST

64. On or around November 15, 2021, Dr. Stallkamp emailed Plaintiff a notice that he was placed on administrative suspension.

65. The notice stated, "Administrative Suspension does not relieve physician from taking calls for emergencies."

66. Defendant's denial of Plaintiff's religious exemption request was arbitrary and capricious.

67. Other physicians, who upon information and belief were not Christian and members of the Tenth Presbyterian Church, were granted religious exemptions by Defendant and have continued to care for patients in Defendant's facilities.

68. The requested religious accommodation would not have been burdensome to Defendant.

69. Defendant had clearly outlined that those who were granted religious exemptions would undergo twice-weekly testing.

70. Those individuals have continued to work in Defendant's facilities without vaccination.

71. Plaintiff repeatedly expressed his willingness to comply with this accommodation, but Defendant denied it.

### DR. STALLKAMP REFUSED TO ALLOW PLAINTIFF TO WORK AT DEFENDANT, DESPITE SEVERAL CODE ORANGE STATES OF EMERGENCY

72. Due to overwhelming patient volumes and intense staffing needs, Defendant declared several Code Orange states of emergency over the following weeks.

73. As Plaintiff's suspension did not relieve him from taking calls for emergencies, he offered to help care for patients during these times.

74. However, Dr. Stallkamp rejected Plaintiff's offers each time.

**DEFENDANT ALLOWED COVID-19 POSITIVE STAFF TO WORK AT DEFENDANT, BUT CONTINUED TO REFUSE PLAINTIFF TO ALLOW TO WORK**

75. As the staffing needs worsened, Defendant adjusted its return-to-work policies on or around December 29, 2021.

76. These revisions allowed staff members with active COVID-19 infections to return to work after five (5) days without re-testing.

77. Plaintiff again volunteered to return to work during the surge, as he was healthy and willing to undergo testing.

78. Others without vaccination were working during the surge.

79. Plaintiff also requested reconsideration of his religious accommodation request given the changing landscape of CDC guidelines for crisis staffing as well as the changing understanding of the reasonableness of wearing masks and testing as an accommodation to not receiving the COVID-19 vaccine.

80. Plaintiff's requests were again denied by Dr. Stallkamp.

81. These actions demonstrate that Plaintiff's sincerely held religious beliefs were never considered or weighed against the reasonableness of the requested accommodation of exemption from the COVID-19 vaccine.

82. Instead, Plaintiff's denial was actually based upon discriminatory and/or retaliatory animus based upon his requested accommodation.

83. Despite the intense staffing crisis, the changing landscape, the reasonableness of Plaintiff's request, the fact that other individuals were accommodated with little burden,

and that Defendant allowed COVID-19 infected staff members to work while keeping healthy staff members under suspension, Defendant did not reconsider his requested accommodation.

84. Instead, Defendant offered crisis staffing bonuses of $100/hour to anyone willing to work, including those still infected with COVID-19.

85. Defendant's reasoning for denying Plaintiff's request is nothing more than pretext for discriminating against him based on his sincerely held religious beliefs and in retaliation for his requests.

### DEFENDANT RETALIATED AGAINST PLAINTIFF BY LIMITING HIS REAPPOINTMENT TO ONE (1) YEAR, INSTEAD OF THE STANDARD TWO (2) YEARS

86. On or around January 24, 2022, the Medical Executive Committee, over which Dr. Simpson presides, further retaliated against Plaintiff by voting to limit the reappointment of physicians who were under prolonged administrative suspension (over 60 days) to one year instead of the standard two (2) years.

### DEFENDANT THEN CHANGED PLAINTIFF'S REAPPOINTMENT BACK TO TWO (2) YEARS, CITING A CLERICAL ERROR

87. On or around March 24, 2022, Plaintiff received a letter from Dr. Stallkamp reappointing him for one year only.

88. When Plaintiff questioned Dr. Gamburg about this, he told Plaintiff that this was a "clerical error."

89. Dr. Stallkamp then issued a new letter reappointing Plaintiff for two (2) years, also stating that this was a "clerical error."

90. Plaintiff received this new letter on March 15, 2022.

### DR. STALLKAMP CONTINUED TO RETALIATE AGAINST PLAINTIFF BY INTERFERING WITH HIS DUTIES AS THE EMS MEDICAL DIRECTOR FOR NARBERTH AMBULANCE AND VILLANOVA UNIVERSITY EMS

91. On or around April 1, 2022, Dr. Stallkamp continued to retaliate against Plaintiff by interfering with his activities outside of Defendant.

92. As part of Plaintiff's community service, he volunteers as the EMS Medical Director for Narberth Ambulance and Villanova University EMS and was responsible for directing large events that occur in the region and on the university campus.

93. During the planning for a recent university event of which Plaintiff was the Event Medical Director, Dr. Stallkamp offered Defendant's staff to assist, but simultaneously refused to allow those staff members to operate in the organizational chain of command because they would be under Plaintiff's direction.

94. Instead, Dr. Stallkamp insisted that an additional physician be present to direct his staff.

95. Dr. Gamburg ultimately agreed to provide and compensate a different physician, Dr. Benjamin Bui.

96. Dr. Stallkamp's actions were retaliatory by impeding and interfering with Plaintiff's activities outside of Defendant, further restricting his avenues of earning income.

97. Upon information and belief, Dr. Stallkamp's actions occurred within the scope of his employment at Defendant and on behalf of Defendant.

98. It is Plaintiff's position that Defendant has discriminated against Plaintiff due to his religion, denied his reasonable religious accommodation and retaliated against him for requesting a reasonable religious accommodation in violation of Title VII and the PHRA.

99. Upon information and belief, Defendant's conduct was willful and/or done with reckless disregard to Plaintiff's federal statutorily-protected rights.

## COUNT I – RELIGIOUS DISCRIMINATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

100. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

101. Plaintiff is a member of protected classes in that he is Christian, specifically a member of the Tenth Presbyterian Church.

102. Plaintiff was qualified to perform the job for which he was hired.

103. Plaintiff suffered adverse job actions, including, but not limited to loss of income and failure to accommodate.

104. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

105. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

106. Defendants discriminated against Plaintiff on the basis of religion.

107. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

108. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

109. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

110. As a result of Defendant's unlawful religious discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RELIGIOUS DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

111. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

112. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of his religion (Christian, Tenth Presbyterian Church).

113. The foregoing also constitutes an unlawful failure to accommodate Plaintiff's sincerely held religious beliefs.

114. As a result of Defendants' unlawful religious discrimination and failure to accommodate, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

115. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

116. Plaintiff engaged in protected activity protected by Title VII when he requested a reasonable religious discrimination.

117. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, loss of income and failure to accommodate.

118. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

119. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

120. Plaintiff engaged in activity protected by the PHRA when he requested a reasonable accommodation.

121. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, loss of income and failure to accommodate.

122. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Joseph Bushra, requests that the Court grant him the following relief against Defendants:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII and the PHRA.

(j) Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: March 20, 2023     **By:**     */s/ David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*