**KOLLER LAW, LLC**
David M. Koller, Esq. (90119)                                   *Counsel for Plaintiff*
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH BUSHRA,**  **Plaintiff,**  v.  **MAIN LINE HEALTH, INC.,**  **Defendant.** | **Civil Action No. 2:23-cv-01090-HB** |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The purpose of anti-discrimination statutes are to promote and ensure equal treatment of individuals regardless of their membership in a protected class. This applies to the protected class of religion to the same extent that it would to race, gender, or disability. There is no dispute that the COVID-19 pandemic, which gripped the world in 2021, was an uncertain time and that there was a multitude of vaccine requirements initiated by many different business and the healthcare industry and caused the deaths of many. Plaintiff also does not dispute the fact that COVID-19 vaccines could be effective in reducing the spread of COVID-19. And while Defendant paints a broad-strokes image in its statement of allegedly undisputed facts about the hardship the healthcare industry faced when required to grant religious accommodations, Title VII and the PHRA still apply and it is clear from the testimony of Defendant's witnesses and its actions that hardship was never the reason why it denied Plaintiff's request for religious accommodation.

Joseph Bushra, M.D., Plaintiff in this matter, is a Presbyterian who worked at Defendant's hospitals as an emergency department physician. His sincerely-held religious beliefs prohibited him from receiving the COVID-19 vaccine. Despite making a request for accommodation and clearly articulating and laying out his sincerely-held religious beliefs which prohibited him from receiving a COVID-19 vaccine, his request was denied. Despite repeatedly denying treating Plaintiff any

differently than the others at Defendant, Defendant did grant the religious accommodation request of a Roman Catholic individual who articulated substantially similar beliefs. Defendant has not and cannot explain the disparate treatment of those individuals and any factfinder reviewing the two accommodation requests would be hard pressed to say one articulated a sincerely held religious belief when the other did not.

Defendant misstates the steps Plaintiff took to dual-file his Charge of Discrimination with the EEOC and the PHRC. Plaintiff specifically requested in his charge of discrimination (both on the EEOC Form 5 and on his continuation pages) that the Charge of Discrimination be dual-filed with the PHRC. To the extent that Plaintiff failed to exhaust administrative remedies, any dismissal of Plaintiff's state law claims should be without prejudice to his refiling in either state or federal court as appropriate. Amendment would cure any alleged deficiencies and Plaintiff's claims have not yet reached the expiration of the statute of limitations. Additionally, even if this Court dismisses Plaintiff's Title VII claims based on Defendant's arguments regarding the lack of an employer-employee relationship, the PHRA extends to independent contractors who is in a profession or occupation regulated by Pennsylvania licensing laws enforced by the Bureau of Professional and Occupational Affairs. Medical Doctors are one such profession.

Finally, Plaintiff validly states *prima facie* claims of both religious

discrimination and retaliation rendering summary judgment and dismissal with prejudice are inappropriate at this juncture. Summary judgment, at its core, is not supposed to be a simple nor expedient matter for a defendant to ask a court to accept its version of events as true and dismiss a case. This Court should deny Defendant's Motion for Summary Judgment.

## II. STATEMENT OF MATERIAL FACTS

Plaintiff incorporates his Response to Defendant's Statement of Undisputed Facts (filed contemporaneously with this response) as if set forth herein at length.

## III. STANDARD OF REVIEW

In Tolan v. Cotton, the Supreme Court reversed an appellate court for "fail[ing] to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 572 U.S. 650, 651 (2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The "'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Tolan, 572 U.S. at 656 (quoting Anderson, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . ." Anderson, 477 U.S. at 255.

3

Put differently, the non-moving party is *not* required to produce conclusive evidence. See Cloverland-Green Spring Dairies, Inc. v. Penna. Milk Marketing Bd., 298 F.3d 201, 217 (3d Cir. 2002). "Instead, it need only offer sufficient evidence for a reasonable jury to find the facts necessary for a decision in its favor." Id.

The above safeguards should be strictly followed since summary judgment deprives the non-movant of the chance to present her case to a jury of her peers. As Justice Black observed:

> The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment.

Adickes v. S. H. Kress & Co., 398 U.S. 144, 176 (1970) (Black, J., concurring).

One of the key protections for the non-moving party is the basic rule that a defendant's state of mind typically should not be decided on summary judgment. See, e.g., Hunt v. Cromartie, 526 U.S. 541 (1999) (error for the District Court to resolve the disputed fact of motivation at the summary judgment stage); Anderson, 477 U.S. at 255.

Summary judgment is only appropriate where, construing all evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Sec'y U.S. Dep't. of Labor v. Kwansy, 853 F.3d 87, 90 (3d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). It is not the Court's job to "weigh the evidence and determine the truth of the matter, but only to determine whether there is a genuine issue for trial." Id. (quoting Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015)).

A party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying aspects of the record which it believes demonstrates the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the party makes this initial showing, the burden shifts to the nonmoving party to demonstrate that there is, actually, a genuine dispute of material fact. U.S. v. 107.9 Acre Parcel of Land in Warren Twp., 898 F.2d 396, 398 (3d Cir. 1990). The nonmoving party, in meeting its burden, is entitled to all reasonable inferences in its favor. Pignataro v. Port Auth. Of N.Y. & N.J., 593 F.2d 265, 268 (3d Cir. 2010).

In determining the existence of a genuine dispute as to any material fact, the "court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 2001). Summary judgment also must be denied if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed. Nathanson v. Medical College of Pennsylvania, 926 F.2d

5

1368 (3d Cir. 1991).

In employment discrimination cases, the summary judgment standard "is applied with added rigor . . . [because] intent and credibility are crucial issues." Sowell v. Kelly Servs., Inc., 139 F. Supp. 3d 684, 690 (E.D. Pa. 2015) (quoting Stewart v. Rutgers, 120 F.3d 426, 431(3d Cir. 1997)). Given the inherent evidentiary question of credibility of an employer's stated reason and whether that reason is pretext, summary judgment is rarely appropriate in this type of case. See id. (citing Marzano v. Computer Sci. Corp., Inc., 91 F.3d 497, 509 (3d Cir. 1996)). Simply pointing to evidence which calls into question the defendant's intent raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment. Marzano, 91 F.3d at 509-10.

## IV. ARGUMENT

### A. Summary Judgment Should Be Denied Because Defendant is a Covered Entity under Title VII since Defendant and MLEMA were Plaintiff's Joint Employers.

Defendant is a covered entity under Title VII and this Court should deny Defendant's Motion for Summary Judgment on Plaintiff's Title VII claims. MLEMA and Defendant acted as joint employers to Plaintiff and Defendant cannot escape the protections of Title VII simply because it categorized Plaintiff as a contractor employed by MLEMA.

The issue for this Court is not who was Plaintiff's actual employer because

both MLEMA and Defendant served as joint employers of Plaintiff. The Third Circuit addressed the issue of joint employers and Title VII in Faush v. Tuesday Morning, Inc.. 808 F.3d 208 (3d Cir. 2015). Faush involved a plaintiff who was an employee of Labor Ready, a staffing agency. Labor Ready assigned Faush to temporarily work at Tuesday Morning. While at Tuesday Morning, Faush heard racial slurs and sued Tuesday Morning arguing it was a joint employer with Labor Ready. In considering whether employers were joint employers, the Faush Court looked not only at who set the pay rate and paid wages, but who supervised the plaintiff and gave him assignments. Tuesday Morning also had control over whether Faush worked at its store. Ultimately, the Faush Court concluded that Labor Ready and Tuesday Morning were joint employers for purposes of Title VII.

Similarly, both Defendant and MLEMA served as joint employers to Plaintiff. Although Plaintiff likely did not take the same level of direction from Defendant as the plaintiff in Faush, a number of indicators support the conclusion that MLEMA and Defendant were Plaintiff's joint employers. MLEMA paid Plaintiff, but Defendant required Plaintiff to be a member of its medical staff to work in its hospitals. Defendant subjected Plaintiff to its rules and policies. It was Defendant, not MLEMA, who had control over granting or denying Plaintiff's religious exemption request. Plaintiff requested the exemption directly from Defendant, not through MLEMA. MLEMA had an exclusive contract with

7

Defendant and only permitted Plaintiff to work part-time at other locations while employed by MLEMA. Finally, Defendant effectively prevented Plaintiff from working when it denied his exemption request and placed him on administrative suspension. As a result of the suspension, despite being an owner of MLEMA, his employment agreement with MLEMA still prohibited him from working other than part-time for other entities.

Despite the classification of Plaintiff as a contractor who worked with MLEMA, Defendant exerted a great amount of control over Plaintiff. So much so that Defendant should be considered a joint employer of Plaintiff. Defendant, as a joint employer, may still be held liable under Title VII even though it is not the traditional Since Defendant is a Joint Employer, or at least there remain genuine issues of material fact regarding whether Defendant served as a Joint Employer, this Court should deny summary judgment.

**B. Any Alleged Failures to Exhaust Administrative Remedies under the PHRA Can Be Cured by Amendment Which the Court May Permit Up to and Including During Trial.**

The PHRA requires a plaintiff to give the PHRC one year to investigate the administrative complaint before filing a complaint in court unless earlier dismissed by the PHRC. 43 P.S. §962(c). Some Courts in this judicial district have held that when a charge of discrimination is dual filed with the EEOC and the PHRC and the EEOC is the lead investigative agency, the PHRC has waived its exclusive right to

investigate for a full year before filing if the charge is dismissed by the EEOC and said dismissal was not requested by the claimant. See Simon v. IPS – Integrated Project Servs., LLC, 2018 U.S. Dist. LEXIS 125012 **6-9 (E.D. Pa. July 25, 2018) (Jones II, J.)[1] (denying a motion to dismiss for failing to exhaust administrative remedies under the PHRA when the EEOC issued a right to sue and, alternatively, because an amended complaint filed after exhaustion cures the deficiency). In this matter, the EEOC issued a right to sue before a year expired and did so even though Plaintiff did not request it. That should suffice to exhaust administrative remedies.

Alternatively, instead of dismissal, this Court could instead permit Plaintiff to amend his complaint or dismiss his PHRA claims without prejudice to refiling his PHRA claims, which would cure any alleged failure to exhaust administrative remedies. Courts in this judicial district have regularly ruled that a prematurely filed complaint can be cured of failing to exhaust administrative remedies if the complaint is amended after the one year limitation. See Simon at **8-9 (citing a string of cases in the Eastern District of Pennsylvania which have denied motions to dismiss PHRA claims for failure to exhaust administrative remedies when the complaint was amended after the one-year jurisdiction expired). In the event that this Court does not conclude administrative remedies under the PHRA were not adequately

---

[1] A true and correct copy of this unpublished opinion is attached hereto as Exhibit "3."

9

exhausted, Plaintiff should be entitled to amend her complaint and reassert the PHRA claims. As it has been more than one-year since the charge was filed, amendment would not be futile since it would cure the alleged deficiency.

If the Court is inclined to grant Defendant's Motion for Summary Judgment, it should instead dismiss Plaintiff's PHRA claims without prejudice to Plaintiff filing an amended complaint asserting his PHRA claims. A party may amend its complaint at any time before trial with the leave of court. Fed. R. Civ. P. 15(a)(2). The court should freely grant such leave when justice requires. Id. There would be no prejudice to Defendant as such amendment would not change or affect Defendant's attack on the merits of Plaintiff's case and does not require any additional discovery. It is a simple matter of calculating dates and it has now been more than a year since the issuance of the right to sue letter.

Additionally, Plaintiff need only file with one agency to constitute filing in both. There exists at least a dispute of material fact as to whether Plaintiff successfully dual-filed his charge with the EEOC and the PHRC when he requested the EEOC dual file his charge. In Fort Bend County v. Davis, 139 S. Ct. 1843 (2019). Justice Ginsberg, in writing for the Court, states: "If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will forward the charge to the other." Id. at 1846.

That is exactly what Plaintiff did here and he should not be punished for any alleged failure by the EEOC to forward the charge.[2]

### C. Plaintiff Presented Sufficient Evidence to Establish a Dispute of Material Fact Regarding His Religious Discrimination Claims.

Pennsylvania Courts generally interpret the PHRA in accord with its federal counterparts, to include Title VII. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). When considering disparate treatment religious discrimination claims, the *prima facie* case burden matches that of a race or sex discrimination claim: membership in a protected class; qualification for the position; suffering an adverse employment action; and the action occurred under circumstances giving rise to an inference of discrimination. See Dinnerstein v. Burlington Cty. College, 764 Fed. App'x 214, 217 (3d Cir. 2019). To establish a failure to accommodate a religious belief claim, a plaintiff must establish that they held a sincere religious belief that conflicted with a job requirement, they notified their employer of that conflict, and that they were disciplined for failing to comply with the conflicting requirement. See Fallon v. Mercy Catholic Med. Ctr., 877 F.3d 487, 490 (3d Cir. 2017).

Unlike Defendant's assertions, this case is different than those presented in Fallon and Federoff v. Geisinger Clinic, 571 F. Supp.3d 376 (M.D. Pa. 2021),

---

[2] Although this is only mentioned in a footnote in Defendant's brief, Defendant ignored Plaintiff's own written statement creating a dispute of material fact as to whether Plaintiff took appropriate steps to exhaust administrative remedies and Plaintiff felt it appropriate to address in brief.

where the plaintiffs made vague assertions of religious beliefs that were actually more personal and social in nature. Here, Plaintiff submitted a letter from his reverend and clearly stated in his application his sincerely held religious beliefs that the vaccine is inconsistent with his religion by supporting the use of fetal cell lines and making him violate his conscience which is against the use of fetal cells. He asserted a belief that is clearly religious in nature – or sufficiently religious to let a jury decide. The reverend expressed the religious nature of Joseph's beliefs, and his objections to the vaccine are more than just a moral conscience or a political belief. There is a strong religious component as revealed by the reverend's letter. Defendant's argument that Plaintiff's belief is not plausible because fetal cells are used elsewhere is exactly what the courts caution against. Especially since Plaintiff was not aware that those same fetal cells were used elsewhere. Additionally, Defendant granted a religious accommodation request of Plaintiff's Roman Catholic Co-worker who cited the same fetal cell issue in her accommodation request.

  It's not for the Court to rule on the truth or falsity of an article of faith – just the sincerity of the belief and whether it's religious in nature. The Court cannot substitute its beliefs for Plaintiff's – he's entitled to find the use of fetal cells in the vaccine offensive and contrary to his religion. The fact remains that Plaintiff sincerely holds the belief and that is sufficient – the validity or plausibility of his

actual belief is not at issue.

Further, this Court should not entertain any arguments by Defendant regarding hardship. At no point did Defendant consider hardship in denying Plaintiff's religious accommodation request. The basis for denial was repeatedly stated to be based on the sincerity of Plaintiff's religious beliefs. Defendant never stated it would be an undue hardship to grant Plaintiff's accommodation request. Therefore, it would be disingenuous now to claim it would pose an undue hardship, especially after granting other religious accommodation requests to individuals based on the same reasoning. A jury should also be allowed to consider whether there would truly have been an *undue* hardship by granting Plaintiff's request when Defendant did grant many other accommodation requests. A rational jury could conclude that if other employees can be exempted from the COVID-19 vaccine requirement, then it would not be an undue hardship on Defendant, especially given the other methods of preventing or reducing transmission risk. There is a dispute of material fact as it relates to undue hardship making the grant of summary judgment improper.

Plaintiff articulated his sincerely held religious beliefs. Notably, his articulated religious beliefs matched and aligned with a Roman Catholic co-worker of his. Plaintiff's religious accommodation request included a letter from his clergy leader who provided support for at least one of Plaintiff's basis for his request.

13

Plaintiff's co-worker's request did not include a clergy member's statement. The difference though, is that Plaintiff's co-worker's request was granted; Plaintiff's request was denied. This is disparate treatment and religious discrimination and a clear indication that the granting of a vaccine exemption based on religious concerns surrounding the fetal cells issue would not pose an undue hardship.

The denial of Plaintiff's requested accommodation resulted in adverse employment actions, in the form of administrative suspension shutting down his ability to practice medicine at Defendant. Without being able to practice medicine, he was unable to work at Defendant and effectively terminated. Since the articulated reason is directly connected the sincerity of Plaintiff's religious belief, the burden-shifting argument rests on the decision regarding Plaintiff's sincerely-held religious beliefs. Given the above, Plaintiff has presented a genuine issue of material fact regarding the sincerity of his religious belief and the religious nature of his belief. Therefore, summary judgment should be denied.

### D. Summary Judgment Should Be Denied Because There Exists Disputed Issues of Material Fact on Plaintiff's Retaliation Claim.

To establish retaliation, the plaintiff must prove (1) he engaged in a protected activity; (2) Defendant took an adverse employment action after the protected activity; and (3) a causal link existed between the activity and adverse employment action.  See, e.g., Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000) (setting forth elements of a *prima facie* retaliation claim). Here,

Plaintiff engaged in protected activity by requesting a religious accommodation from the COVID-19 vaccine requirement. But he went beyond that when he appealed the denial and asked for intervention from other entities within Defendant's leadership and decision-makers. Mr. Robinson's visible disdain to Plaintiff's stated reasoning for requesting accommodation demonstrates retaliatory motive and a pattern of antagonism by decision makers. Defendant's stated reasoning for denying Plaintiff's requested accommodation, claiming he did not state a sincerely held religious belief, despite granting other exemption requests and appeals based on the same reasoning indicates a retaliatory intent against Plaintiff, campus chief and chair of the LMC emergency department, for requesting an accommodation.

    This is further exemplified by Defendant's actions to quickly move to name a replacement. Although Defendant articulates the necessity and importance of having a backup in case his request was denied, a rational factfinder could conclude that Defendant retaliated against Plaintiff given his visible position at Defendant, for Plaintiff's request for a religious accommodation. This is further highlighted by the granting of other religious accommodation requests based on the same reasoning. Taking all facts in the light most favorable to Plaintiff as the non-movant, it would be improper to grant summary judgment and the Court should deny Defendant's motion.

## V. CONCLUSION

For the reasons stated herein, Plaintiff Joseph Bushra respectfully requests that the Court deny Defendant's Motion for Summary Judgment and enter an order substantially in form with the Order submitted herewith.

                                                  Respectfully Submitted,

                                                  **KOLLER LAW, LLC**

                                                  By:*/s/ David M. Koller*
                                                       David M. Koller, Esq. (90119)
                                                       Jordan D. Santo, Esq. (320573)
                                                       2043 Locust Street, Suite 1B
                                                       davidk@kollerlawfirm.com
                                                       T: (215) 545-8917
                                                      F: (215) 575-0826

DATE: November 6, 2023                         *Counsel for Plaintiff*