IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH BUSHRA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MAIN LINE HEALTH, INC. | : | NO. 23-1090 |

MEMORANDUM

Bartle, J.                                December 28, 2023

Plaintiff Joseph Bushra, a physician, has sued
defendant Main Line Health, Inc. ("MLH") for alleged violations
of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations
Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 et seq.  He claims that
he was subjected to unlawful discrimination and retaliation
because of his Christian faith as a Presbyterian for refusing to
be vaccinated against COVID-19.  Defendant has now moved for
summary judgment pursuant to Rule 56 of the Federal Rules of
Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  A dispute is genuine if the evidence is such that a

reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The following facts are undisputed.  Dr. Bushra is a member of the Tenth Presbyterian Church in Philadelphia.  He worked as an attending physician in the emergency room at Lankenau Medical Center ("Lankenau") and served as Campus Chief of Lankenau's Emergency Department.

Lankenau is one of four acute care hospitals in the MLH system.  Staffing for the emergency departments at the MLH

hospitals is provided through an exclusive services contract with a private practice group called Main Line Emergency Medicine Associates, LLC ("MLEMA").  MLEMA employed Dr. Bushra in 2003.  He became an owner of MLEMA in 2006.  Separate from his services through MLEMA as an emergency room doctor and campus chief, Dr. Bushra had an independent contractor agreement with MLH to serve as the Medical Director for Emergency Medical Services.

Outside of the separate independent contractor agreement, MLH did not compensate him.  MLEMA charges MLH for the services performed by its physicians and remits a portion of those fees to each physician pursuant to their Operating Agreement.  Physicians are permitted to work part-time elsewhere only if they render adequate services to MLH.  Thus, Dr. Bushra received a portion of MLEMA's profits as compensation for rendering physician services.  MLEMA also provided him health, retirement, malpractice insurance, and other benefits.

However, MLH requires MLEMA physicians to follow certain policies and procedures.  To treat patients, Dr. Bushra was required to hold MLH medical staff membership and seek renewal every two years.  As a member, he had to comply with the medical staff bylaws, rules, regulations, policies, and procedures of MLH.

On July 15, 2021, MLH adopted a policy mandating that all members of the medical staff receive vaccination against COVID-19 by October 1, 2021.  Dr. Bushra had contracted and recovered from COVID-19 in June 2021.  On September 1, 2021, he emailed his COVID-positive test results from June to Dr. Emma Simpson, the President of the Medical Staff, as proof that he had natural immunity and did not require vaccination.  He reiterated to Dr. Simpson on September 12, 2021 that he was "not requesting a medical or religious exemption at this time."

Three days later, on September 15, 2021, Dr. Bushra changed course and submitted an application for a COVID-19 vaccine exemption on religious grounds.  He marked in the application that he had not received a religious exemption from MLH for the annual flu vaccination and that his Christian beliefs prevented him from receiving "[s]ome but not all vaccines."

Dr. Bushra raised four specific objections.  First, he stated in his application:

> [M]y Christian worldview teaches that human life begins at the moment of conception, and that abortion, which ends a human life, is therefore murder. Utilizing cells obtained from aborted fetuses for medical research is therefore morally reprehensible. The pharmaceutical companies that have manufactured the currently available COVID-19 vaccines have all utilized fetal cell lines in some fashion during development and/or production. It is my sincerely-held

-4-

> belief that my receiving a vaccine developed
> using fetal cells would signify my approval
> of the unethical means used to develop it,
> which I cannot do while remaining true to my
> faith.

It is undisputed that the three COVID-19 vaccines available in September 2021 from Moderna, Pfizer and BioNtech, and Janssen Biotech all used cell lines derived from fetal tissue in their development or manufacture.[1]

Second, Dr. Bushra stated on his exemption application that his sincerely held religious beliefs prohibited him from taking action that puts him at unnecessary risk of harm.  He wrote that he was "at extremely low risk of reinfection or death from COVID-19" and that "the clinical benefit of receiving vaccination after infection is not known to outweigh [COVID-19 vaccination] risks."

Third, he added that his sincerely held religious beliefs prohibited him from "receiv[ing] a scarce vaccine or booster before someone else who may receive a greater benefit," specifically, individuals "who are at higher risk of death from COVID-19 than [him]."

Fourth, he wrote that:

> Finally, and most importantly, my Christian
> worldview requires me to act in accordance
> with my conscience; to violate my conscience

---

1.   In a deposition, Dr. Bushra testified that he did not know whether the fetal cell lines used in the COVID-19 vaccine were originally obtained through the killing of a fetus.

-5-

is a sin. This teaching is explicit in the
Christian scriptures, and is recognized by
the First Amendment to the Constitution. For
the above and many other reasons, receiving
the COVID vaccination at this time would
violate my conscience, and would therefore
be a sinful act on my part.

In support of his application for a religious
exemption, he included a letter from his minister, The Rev. Dr.
Liam Goligher, who conveyed that "Dr. Bushra would be sinning by
violating his conscience before the Lord.  For him this is not a
physical matter only but a spiritual matter."  The minister
concluded that Dr. Bushra's "sincere convictions in respect of
vaccines cannot be separated from his convictions as a follower
of God, which is his core identity."

MLH's Religious Exemption Committee denied Dr.
Bushra's request, and he appealed to the MLH Appeals Committee.
On October 19, 2021, the Appeals Committee held that he had not
articulated a sincerely held religious belief and denied the
request.  MLH advised him that he would be placed on
administrative suspension if he did not receive the first dose
of the COVID-19 vaccine within fourteen days.  He did not do so.
On November 15, 2021, Dr. Bushra was placed on administrative
suspension from the medical staff at MLH.  Although he remained
an owner of MLEMA, he was no longer Campus Chief and could not
care for his patients at MLH.

The Novavax vaccine, which did not involve fetal cell lines, became available in July 2022.  Two of Dr. Bushra's MLEMA colleagues discussed it with him earlier, in April 2022.  However, he was not vaccinated because Novavax had received only emergency approval from the Food and Drug Administration.  Dr. Bushra is not opposed to Novavax "[f]rom a religious standpoint, strictly on the fetal cell line issue."  Rather, his religious objection is that "my faith tells me and the Bible teaches me to be wise . . . and that to take on unnecessary risk is foolish and that foolishness is sin."

Dr. Bushra filed a charge of religious discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on April 15, 2022.  On December 19, 2022, the EEOC issued a notice of right to sue.  Dr. Bushra filed the instant action on March 20, 2023, which as noted included claims under both Title VII and the PHRA.  This lawsuit was filed within the ninety-day period allowed under Title VII but before the one-year period had expired before a lawsuit may be filed under the PHRA.  Dr. Bushra at this point has not moved to amend his complaint regarding his PHRA claims.

III

Title VII prohibits discrimination and retaliation by an employer against an employee because of the employee's religion.  42 U.S.C. § 2000e-2(a)(1).  The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [a] religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

The PHRA similarly prohibits employment discrimination because of "religious creed."  43 Pa. Cons. Stat. § 953. Because Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts," this court may generally consider Dr. Bushra's PHRA claim as coextensive with his Title VII claim.  Kelly v. Drexel U., 94 F.3d 102, 105 (3d Cir. 1996). However, the two statutes differ in at least one respect.  Title VII protects only individuals who are in an employment relationship with an employer, including a joint employer. Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213-115 (3d Cir. 2015).  In contrast, the PHRA not only covers employees but also "certain limited categories of independent contractors," which include licensed professionals and other workers regulated by the Pennsylvania Bureau of Professional and Occupational Affairs

or by the Fair Housing Act.  See id.;  43 Pa. Cons. Stat. § 954(x).

Defendant MLH argues that summary judgment is appropriate on several grounds.  First, Dr. Bushra cannot maintain a Title VII action because MLH was not his employer. While Dr. Bushra has conceded he is not an employee of MLH, he counters that he has pleaded a joint employment relationship with MLH and MLEMA.  In Nationwide Mut. Ins. Co. v. Darden, the Supreme Court explained that "[i]n determining whether a hired party is an employee . . . we consider the hiring party's right to control the manner and means by which the product is accomplished."  503 U.S. 318, 323 (1992).  Here, MLH maintains significant control over Dr. Bushra in that it requires him to comply with its by-laws, rules, regulations, policies, and procedures.  See id.;  Faush, 808 F.3d at 214-15.  This is not the usual basis of an independent contractor relationship.

Dr. Bushra as a physician is a licensed professional. It is undisputed that he is an employee and owner of MLEMA, which has an exclusive services contract with MLH.  Furthermore, as noted above, it is undisputed that as an attending physician at MLH, he must follow its policies and procedures. Accordingly, even if he is not an employee of MLH, there is sufficient evidence for a jury to find that he had an

independent contractor relationship with MLH, and thus, that he is protected under the PHRA.

Second, MLH raised the affirmative defense in its Answer that Dr. Bushra had not exhausted his administrative remedies under the PHRA.  It maintains that he cannot pursue a PHRA action because he filed suit before the PHRC issued notice of dismissal or before the one-year statutory period had expired.  See 43 Pa. Cons. Stat. § 962(c)(1).

Exhaustion of administrative procedures is a prerequisite to filing suit under both Title VII and the PHRA. An action under Title VII is premature if it is filed before the EEOC has investigated the claim and issued a notice of right to sue.  42 U.S.C. § 2000e-5(e)(1).  Similarly, an action under the PHRA is premature if it is filed before the PHRC has dismissed the administrative complaint or investigated the matter for one year.  43 Pa. Cons. Stat. § 962(c)(1).

An individual may simultaneously file an administrative complaint with both the EEOC and the PHRC and designate which agency has initial jurisdiction over the matter. Simon v. IPS-Integrated Project Services, LLC, No. CV 17-03474, 2018 WL 3585137 at *3 (E.D. Pa. July 26, 2018).  However, dual-filing may present an administrative exhaustion issue when a federal complaint is docketed.  Where, as here, the EEOC first investigates the matter and issues the notice of right to sue,

the complainant must file suit within ninety days or lose out on his Title VII claims.  Id. at *3-*4.  But if the PHRC has not also dismissed the suit within ninety days, then the PHRC claims are premature until one year has passed.  Id.  Courts sitting in the Eastern District of Pennsylvania have often resolved this issue by allowing plaintiffs to cure premature filing under the PHRA by submitting an Amended Complaint after the one-year limitation has expired.  Id. at *4.  This approach comports with Federal Rule of Civil Procedure 15(a)(2), which gives courts substantial leeway to grant leave to file an amended pleading. See Fed. R. Civ. P. 15(a)(2).

     The one-year period has now run.  Thus, the defense while at one point valid is no longer so.  It would be highly formalistic and a waste of judicial resources to dismiss Dr. Bushra's PHRA claims at this time and await a motion to file an amended complaint.  Since he has already pleaded PHRA claims, any amendment, of course, would be granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure as in the interest of justice.  See Fed. R. Civ. P. 15(a)(2).  The Court is also cognizant of the oft-neglected Rule 1, which states that the civil rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Under the circumstances, the court will deem the

complaint as now properly pleading PHRA claims.  Even if Dr.
Bushra has no claim under Title VII because he is not an
employee of MLH, there is sufficient evidence, as noted above,
for a jury to find that he is a person covered under the PHRA.
See 28 U.S.C. § 1367.

IV

MLH further contends that no reasonable juror could
find that Dr. Bushra can maintain any claim of religious
discrimination.

To succeed in a retaliation claim, a Title VII
plaintiff must prove that: (1) he engaged in a protected
activity, (2) he suffered an adverse employment action, and
(3) there was a causal connection between the protected activity
and the adverse employment action.  See Moore v. City of
Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).  Here, Dr.
Bushra alleges that he was retaliated against for applying for a
religious exemption, which he contends is a protected activity.
However, as the Court of Appeals for the Eighth Circuit
explained in EEOC v. North Memorial Health Care, "merely
requesting a religious accommodation is not the same as opposing
the allegedly unlawful denial of a religious accommodation."
908 F.3d 1098, 1102 (8th Cir. 2018).  Although the latter is
protected activity under Title VII, the former is not.  See id.;
Divine Equal. Righteous v. Overbrook Sch. for the Blind, No. CV

-12-

23-846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023).  Dr. Bushra cannot prevail on his retaliation claim merely because he applied for a religious accommodation.  Because he offers no other ground for retaliation, no rational juror could find for Dr. Bushra on this claim.  See Anderson, 477 U.S. at 252.

To succeed in his failure to accommodate claim, Dr. Bushra must establish that: (1) he held a sincere religious belief that conflicted with MLH's COVID-19 vaccination requirement; (2) he informed MLH of this conflict; and (3) he was disciplined for failing to comply with the conflicting vaccination requirement.  See Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania, 877 F.3d 487, 490 (3d Cir. 2017).  It is undisputed that Dr. Bushra informed MLH of his religious objection to the COVID-19 vaccine and that MLH placed him on administrative suspension when his request for accommodation was denied and he remained unvaccinated.

Dr. Bushra claims that tenets of his Christian faith as a Presbyterian prevented him from receiving vaccination against COVID-19.  The Title VII inquiry, however, does not end when a plaintiff simply labels a stated belief as faith-based.  Dr. Bushra must come forward with evidence at this stage that his belief is religious in nature and sincerely held.  Fallon, 877 F.3d at 490-91 (3d Cir. 2017).

The Supreme Court and Court of Appeals for the Third Circuit have well-established guidelines for this inquiry. Courts, of course, may not consider the validity or plausibility of a person's belief.  United States v. Seeger, 380 U.S. 163, 184-85 (1965).  Rather, this court must focus on whether there is a genuine dispute of material fact that Dr. Bushra's beliefs are religious in nature or "essentially political, sociological, or philosophical."  See Africa v. Commonwealth, 662 F.2d 1025, 1031 (3d Cir. 1981); Fallon, 877 F.3d at 490.   As defined by our Court of Appeals in the context of an alleged civil rights violation, religion addresses fundamental and important questions, consists of a comprehensive belief system and not an isolated moral teaching, and is recognizable by the presence of formal and external signs.  Africa, 662 F.2d at 1032.

Nonetheless, religion cannot be a "limitless excuse for avoiding all unwanted obligations."  See Finkbeiner v. Geisinger Clinic, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), appeal dismissed, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023).  The Supreme Court and our Court of Appeals have made clear that "'the very concept of ordered liberty precludes allowing' [plaintiff], or any other person, a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'"  See Africa, 662

-14-

F.2d at 1031 (quoting Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972)).

In Fallon, a healthcare worker, Paul Fallon, refused inoculation against the flu.  877 F.3d at 489.  He claimed a religious exemption, but he did not belong to any organized religious group.  Id.  He explained that being vaccinated would violate his conscience as to what is right and what is wrong. Id. at 492.  The flu vaccine, in his view, would do more harm than good.  Id.  He simply stated that he agreed with a quote attributed to the founder of Buddhism.  Id.  That quote in essence urged a person to accept and do anything that "agrees with reason and is conducive to the good and benefit of one and all."  Id.

Our Court of Appeals held that Mr. Fallon's "concern that the flu vaccine may do more harm than good" was a medical belief which plaintiff later justified through "one general moral commandment" not to harm one's body.  Id.  This "isolated moral teaching" was not comprehensive, and thus, not religious in nature.  See id.;  Africa, 662 F.2d at 1032.

Here, Dr. Bushra sought a religious exemption based on Christian beliefs respecting the sanctity of life, avoiding unnecessary risk of harm to oneself, giving scarce COVID-19 vaccines to those in greater need, and refraining from violating one's moral conscience.  Citing Fallon, MLH counters that Dr.

Bushra's opposition to COVID-19 is solely based on his medical
or scientific belief in the possible dangers of the vaccine to
him.  See 877 F.3d at 492.  It further contends that his fourth
allegedly religious objection concerning an offense to his
conscience would confer a blanket privilege prohibited by our
Court of Appeals.  See Africa, 662 F.2d at 1031.

Dr. Bushra's claim is materially different from Paul
Fallon's.  Dr. Bushra is a member of the Tenth Presbyterian
Church in Philadelphia and specifically ties his objection to
the vaccine to his religious faith.  It is undisputed that
Presbyterians are a long-established branch of Protestant
Christianity having its origins in the sixteenth century
Reformation.  The Presbyterian denomination meets all three
Africa factors.  662 F.2d at 1032.  Dr. Bushra's religion
addresses fundamental and important questions, has a
comprehensive belief system, and is recognizable by formal and
external signs.  See id.  While Mr. Fallon failed to link his
objections to the flu vaccine to any specific religious tenet,
Dr. Bushra's application for a religious exemption specifically
professes that receiving vaccination involving fetal cell lines
would be contrary to the Scriptures and would not only violate
his conscience but would constitute a sin, in effect a
transgression of God's will.  See Fallon, 877 F.3d at 492-93.

Dr. Bushra has presented sufficient evidence to establish a genuine dispute of material fact on summary judgment.  See Anderson, 477 U.S. at 254.  It is for the jury to determine whether he has a sincerely held religious belief.

V

Even if Dr. Bushra has a sincerely held religious belief, there is no violation of Title VII or the PHRA if MLH can establish that any religious accommodation would have imposed "undue hardship on the conduct of [its] business."  See 42 U.S.C. § 2000e(j).  MLH maintains that granting a religious exemption to Dr. Bushra, an emergency room doctor during a global pandemic, would have posed an undue hardship by threatening the health and safety of its patients and staff.

The Supreme Court recently clarified the "undue hardship" standard in a case involving a postal worker eschewing work on Sundays because of his Evangelical Christian belief in observing the Sabbath.  Groff v. DeJoy, 600 U.S. 447 (2023). The Court held that an employer simply showing "more than a de minimis cost . . . does not suffice to establish 'undue hardship' under Title VII."  Id. at 468.  The employer must demonstrate that the accommodation "would result in substantial increased costs in relation to the conduct of its particular business."  Id. at 470.  This inquiry "takes into account all relevant factors in the case at hand, including the particular

-17-

accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." Id. at 470. Thus, "the context of an employer's business" matters in determining whether a hardship would be substantial. Id. at 471.

Our Court of Appeals has recognized that both "economic and non-economic costs can impose an undue hardship on employers." E.E.O.C. v. Geo Group, Inc., 616 F.3d 265, 273 (3d Cir. 2010). This principle comports with the Supreme Court's emphasis on a context-specific inquiry of "undue hardship."

Here, MLH contends that each vaccine exemption poses a significant risk to the health and safety of employees and patients. It relies on the expert opinion of Dr. Daniel Salmon, the Director of the Institute for Vaccine Safety and a Professor of Global Disease Epidemiology and Control at Johns Hopkins University.

According to Dr. Salmon, healthcare workers were more likely to contract COVID-19 than others because they faced significant exposure to the virus through infected patients and other healthcare staff. Indeed, members of MLH staff died from contracting COVID-19 in the first year of the pandemic. A study published in a peer-reviewed medical journal found that in 2020, healthcare workers with direct patient contact had four times the risk of contracting COVID-19 compared with healthcare

workers without direct patient contact.  Because healthcare
workers faced such significant infection risk, they were also
more likely to transmit the disease.  More importantly,
healthcare workers were at increased risk of infecting their
patients, which included persons at increased risk of serious
complications and death from the disease.  For these reasons,
the Centers for Disease Control and Prevention ("CDC")
prioritized healthcare workers for COVID-19 inoculation when the
vaccines became available.

Dr. Salmon explains that vaccines were proven to be
highly effective in preventing the disease at the time that MLH
instituted the mandate.  According to him, "full vaccination
with COVID-19 vaccines was 80% effective in preventing COVID-
19."  Although several studies found that some natural immunity
derived from contracting COVID-19 existed for at least a short
period of time, there was insufficient empirical data to
determine its effectiveness, the length of protection, and
whether protection extended to new variants that might emerge.
The CDC recommended, in no uncertain terms, that all eligible
persons should be vaccinated, including those with previous
COVID-19 infection.

The court takes judicial notice that COVID-19 caused a
deadly global pandemic at a scale unseen in a century.  As of
this writing, the disease has killed over one million people in

-19-

the United States since February 2020.  Centers for Disease
Control and Prevention, COVID-19 Data Tracker (Dec. 20, 2023),
https://covid.cdc.gov/covid-data-tracker.  The cumulative death
toll in July 2021, when MLH announced its vaccination policy,
was over 600,000.  Id.

It cannot be disputed that without the vaccine, Dr.
Bushra was at great risk of contracting and transmitting the
disease because he had frequent and direct contact with patients
and staff as a doctor in the emergency room.  Unvaccinated, Dr.
Bushra risked infecting and even causing the death not only of
his colleagues and MLH staff but also of vulnerable patients.
The ability of MLH to continue its mission of caring for,
treating, and healing the sick and injured would have been
severely impaired with an unvaccinated Dr. Bushra in its midst.
In sum, there can be no doubt that MLH would have incurred undue
hardship in the form of substantial social, if not economic,
costs if it had been required to accommodate Dr. Bushra's
religious beliefs.

Dr. Bushra does not dispute the factual assertions of
MLH drawn from or otherwise challenge Dr. Salmon's expert
report.  Nor does he present a rebuttal expert.  He simply
counters that MLH is "disingenuous" to argue undue hardship
because it granted the religious accommodation request of a
Roman Catholic member of MLH staff.

Even if such an accommodation would be relevant to undue hardship, the only admissible evidence that Dr. Bushra presents as to this alleged religious accommodation is what purports to be the partially-redacted application of the Roman Catholic individual.  All other information as to this individual and any accommodation is based on Dr. Bushra's testimony at his deposition.  The testimony is inadmissible hearsay.  See Fed. R. Civ. P. 801, 802.  It is offered for the truth and based upon what others told him.  See Fed. R. Civ. P. 801(c).  He does not have any relevant firsthand knowledge on this subject, and he made no attempt to obtain further evidence on this subject from MLH.

MLH has established that it would suffer undue hardship, as defined in Groff, if it were required to accommodate any sincerely-held religious belief of Dr. Bushra. See 600 U.S. at 470.  There is no evidence to the contrary to create a genuine dispute of material fact.  The motion of MLH for summary judgment will be granted.